UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

ACIM NY, LLC d/b/a NISSAN OF
MANHATTAN, ALIM NY, LLC d/b/a
INFINITI OF MANHATTAN, and BICOM
NY, LLC d/b/a JAGUAR LAND ROVER
MANHATTAN,

      Plaintiffs,

  -v-

NISSAN NORTH AMERICA, INC. and
NISSAN MOTOR ACCEPTANCE CORP.,

      Defendants.

-----------------------------------------------------------x

**UNDER SEAL**[1]
No. 17-CV-729-LTS

<u>MEMORANDUM OPINION AND ORDER</u>

      On January 20, 2017, Plaintiffs ACIM NY, LLC d/b/a Nissan of Manhattan ("ACIM"), ALIM NY, LLC d/b/a Infiniti of Manhattan ("ALIM", and together, "Manhattan"), and BICOM NY, LLC d/b/a Jaguar Land Rover Manhattan ("BICOM") (collectively, "Plaintiffs") filed a Verified Complaint (the "Complaint") and Summons in New York State Supreme Court - New York County, as well as a Motion (the "Motion") by Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction, against Defendants Nissan North America, Inc. ("NNA"), and Nissan Motor Acceptance Corp. ("NMAC") (collectively, "Defendants"). (Docket Entry Nos. 35, 43.) Defendants removed the case to this Court and

---

[1] **This order will be filed under seal for seven (7) days from the date of this order.** The parties are directed to deliver to chambers of the undersigned by **February 28, 2017**, a joint letter identifying any portion(s) of this Memorandum Opinion and Order that they contend should be redacted before it is filed on the public docket, as well as the basis for such redaction request(s).

Plaintiffs now seek a preliminary injunction and temporary restraining order: (1) enjoining NNA from taking any action to interfere with Plaintiffs' possession of premises located at 787 Eleventh Avenue, New York, NY, which Manhattan subleases from NNA; and 2) directing Defendant NNA, the prime tenant of the premises, to instruct Georgetown Eleventh Avenue Owners, LLC ("Georgetown"), the owner of the premises, to reimburse BICOM for Tenant Improvement ("TI") expenses incurred on behalf of Manhattan.  (Memorandum of Law in Support of Plaintiffs' Motion by Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction, and to File the Verified Complaint Under Seal ("Plaintiffs' Opening Br."), Docket Entry No. 43, at 1.)  The Motion is currently pending before the Court.

This court has jurisdiction of this action pursuant to 28 U.S.C. § 1332.

On February 16, 2017, the Court held oral argument on the Motion.  The Court has carefully reviewed and considered all of the parties' submissions and arguments.

For the reasons set forth below, Plaintiffs' Motion is denied.  This Memorandum Opinion and Order sets forth the Court's findings of fact and conclusions of law in accordance with Federal Rules of Civil Procedure 52 and 65.

### FINDINGS OF FACT

Manhattan is a Nissan/Infiniti dealership located in New York City.  (Complaint ¶¶ 1, 15, 16.)  BICOM is a licensed and authorized Jaguar Land Rover dealer and serves as the construction project manager for the construction project in premises, located at 787 Eleventh Avenue, which are leased from Georgetown by both BICOM and NNA.  Id. ¶ 17.  NNA sells Nissan and Infiniti vehicles to franchised Nissan and Infiniti dealers throughout the United States.  Id. ¶ 18.  NMAC operates as NNA's captive finance arm, providing both consumer and

commercial financing to Nissan and Infiniti customers and dealers.  Id. ¶ 19.  NMAC also establishes wholesale credit lines and provides purchase money financing to enable participating dealers to acquire in-store inventory for retail sale to the public, a practice that is commonly referred to as "wholesale" or "floor plan" financing.  (Decl. of Kevin Wagstaff in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Wagstaff Decl."), Docket Entry No. 25, ¶ 3.)

In or around November 2015, Manhattan entered into a business relationship with Defendants to build a renovated Nissan/Infiniti dealership on "Auto Row" in the Midtown West area of Manhattan in New York City.  (Compl. ¶ 2.)  Pending the completion of the construction, Manhattan opened and continues to operate a temporary facility nearby.  See id. ¶ 4.  Plaintiffs and Defendants have entered into a series of interlocking franchise, financing, and real estate-related agreements, including Manhattan's sublease from NNA of the portion of the building at 787 Eleventh Avenue (the "Building") that is the site of the planned Nissan/Infiniti dealership (the "Premises").  Manhattan and NMAC also entered into various working capital and mortgage loans and revolving lines of credit, in part to fund the construction of the Premises.  (Decl. of Randy Brooks in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Brooks Decl."), Docket Entry No. 24, ¶ 5.)  The Building is also the current and future site of BICOM's Jaguar Land Rover dealership, which is also undergoing renovation.  BICOM has leased its portion of the Building directly from Georgetown.  The financing, dealership, and real estate agreements among NNA, Manhattan, and NMAC include cross-default provisions under which defaults under financing and dealership standing covenants constitute defaults under other agreements, including the sublease.

Manhattan breached its floor plan financing agreement with NMAC by failing to repay NMAC, for monies advanced in connection with the acquisition of cars for sale, proceeds

of the retail sale of each financed vehicle.  The failure to repay NMAC in connection with a given vehicle sale is referred to as a "sale out of trust" ("SOT").  Id. ¶ 4.

By October 2016, Manhattan and other Nissan/Infiniti dealerships owned by Gary Flom "had sold hundreds of vehicles without paying off the liens to NMAC on those vehicles, including the sale of numerous vehicles to other Nissan and Infiniti dealers[,]" and, as of February 10, 2017, the total SOTs for the group of dealerships was $7,639,891.57.  Id. at ¶ 6.  Plaintiffs represent, and Defendants do not dispute, that Manhattan's portion of the SOTs totals $6.5 or $7 million.  (Hr'g Tr. at 10:25-11:3.)  Defendants represent, and Plaintiffs do not dispute, that the financial transactions and arrangements among the parties and the other Flom-affiliated dealerships entail not only cross-defaults but also cross-collateralization, and the SOTs are therefore intertwined as a practical and legal matter with other outstanding indebtedness to NMAC.  See id. at 22:4-25.

As a result of the SOTs, NMAC suspended Manhattan's floor plan financing and construction loans extended.  (Compl. ¶ ¶ 113, 114.)  Following notification that the floor plan funding had been suspended, NNA sent ACIM and ALIM letters advising the dealerships that they were in breach of their dealership agreements.  (See Wagstaff Decl. ¶ ¶ 14-15, Exs. 3, 4.)  On December 22, 2016, NNA notified Plaintiffs that the lack of floor plan financing constituted default under an additional agreement between the parties and gave Manhattan thirty days, or until January 22, 2017, to cure the default.  See id. ¶ 16, Ex. 5.  The default under the additional agreement also constituted a default under Manhattan's sublease of the Premises.  Plaintiffs, which have not cured the defaults, commenced this lawsuit on January 20, 2017.  Plaintiffs are insolvent.

Manhattan's Managing Partner, Gary Flom, represents that "Manhattan can cure

the [sublease] default either by: 1) prevailing in the litigation more fully described in the verified complaint; or 2) recapitalizing Manhattan and replacing NMAC as the floorplan lender with a larger bank, such as Bank of America or Chase.  Such negotiations are in progress and in [sic] committed to replacement financing to cure any alleged default should one be determined during the course of these proceedings."  (Declaration of Gary B. Flom in Further Support of Plaintiffs' Motion for Preliminary Injunction ("Flom Decl."), Docket Entry No. 33, ¶ 32.)  At oral argument, Plaintiffs' counsel confirmed that Flom's intent was to convey his personal commitment to securing replacement financing, rather than to represent that Manhattan had secured the commitment of a lender to provide such financing.  (See Hr'g Tr. at 13:17-14:8.)  Flom further represents that "[e]ven if it should take roughly 90-120 days to obtain financing for vehicle inventory (or a 'floorplan'), [he] anticipate[s] a recapitalization of Manhattan shortly after construction is complete, but in no event later than July[] 2017."  Flom Decl. ¶ 33.  Manhattan was notified about the floor plan financing-related default in October 2016 (see Wagstaff Decl. ¶ ¶ 14-15, Exs. 3, 4), and has not yet secured a replacement lender, which calls into question the plausibility of Flom's implicit assertion that financing could be secured within a period of 90-120 days.  Furthermore, Plaintiffs did not contest Defendants' assertions at oral argument that the financing agreements with NMAC for all of the dealerships in the area controlled by Flom have cross-default and cross-collateralization provisions, that Flom has outstanding SOTs with respect to multiple such dealerships and that, in light of the cross-default and cross-collateralization provisions, replacement of the floor plan financing for Manhattan would require the retirement of approximately $56 million in total outstanding Flom-related debt to NMAC as well as ongoing floor plan financing.  (See Hr'g Tr. at 38:21-39:6, 39:17-40:9.)  Thus, although the Manhattan-related SOTs total $7 million or less, the amount of new financing

required to cure the defaults and prevent termination of the sublease is in the tens of millions of dollars.  Plaintiffs' counsel was unable to represent that Plaintiffs have any prospect of recovering such an amount in this litigation or of securing alternative financing of that magnitude.  See id. at 10:14-11:13, 39:17-40:9.

BICOM, another Flom-affiliated business, currently occupies and operates its Jaguar Land Rover dealership in the Building and has been managing the renovation of space for its own and Manhattan's dealership spaces.  (See Complaint ¶ 17.)  BICOM has "secured alternate hard money financing at the exorbitant interest rate of 20%" to continue funding the construction project.  Id. ¶ 115.  The parties' contract with the Building's owner provides for TI reimbursement payments to BICOM and to Manhattan in connection with construction expenses.  On or about July 20, 2016, Manhattan, NMAC, and NNA executed a Direct Payment Agreement (the "DPA"), providing for the payment of all TI reimbursements due and payable to Manhattan to NMAC toward outstanding balances on the construction loan previously provided by NMAC.  (See Wagstaff Decl., ¶ 17, Ex. 7.)  There is still an outstanding balance on that loan.

Plaintiffs assert that, unless they are granted their requested relief, "the multi-million dollar construction project will be forced to stop, causing additional expenses, endangering BICOM's occupancy and operations, and increasing the likelihood Manhattan's dealership will be shut down," which would "irreparably harm[]" BICOM, "since it has valuable property rights with respect to its current operations in NNA's portion of the [B]uilding." (Complaint ¶ 12.)

CONCLUSIONS OF LAW

Yellowstone Injunction

Plaintiffs seek a temporary restraining order and preliminary injunction prohibiting NNA from interfering with Plaintiffs' occupation of the Premises, pursuant to First Nat'l Stores, Inc. v. Yellowstone Shopping Ctr, Inc., 21 N.Y. 2d 630 (1968). Defendants oppose the application, asserting that Plaintiffs cannot demonstrate their entitlement to such an injunction because they are unwilling and unable to cure their default.

"A Yellowstone injunction maintains the status quo so that a commercial tenant, when confronted by a threat of termination of its lease, may protect its investment in the leasehold by obtaining a stay tolling the cure period so that upon an adverse determination on the merits the tenant may cure the default and avoid a forfeiture. The party requesting a Yellowstone injunction must demonstrate that: (1) it holds a commercial lease; (2) it received from the landlord either a notice of default, a notice to cure, or a threat of termination of the lease; (3) it requested injunctive relief prior to the termination of the lease; and (4) it is prepared and maintains the ability to cure the alleged default by any means short of vacating the premises. These standards reflect and reinforce the limited purpose of a Yellowstone injunction: to stop the running of the applicable cure period." Graubard Mollen Horowitz Pomeranz & Shapiro v. 600 Third Ave. Assocs., 93 N.Y.2d 508, 514, 693 N.Y.S.2d 91, 94-95, 715 N.E.2d 117, 120 (1999) (internal quotation marks and citations omitted). To secure a Yellowstone injunction, the tenant does not need to "prove its ability to cure," but, rather, the tenant must show that "a basis exists for believing that the tenant has the ability to cure," WPA/Partners LLC v. Port Imperial Ferry Corp., 307 A.D.2d 234, 237, 763 N.Y.S.2d 266 (1st Dep't 2003) (internal quotation marks, ellipses, and brackets omitted), and "must also convince the court of his desire and ability to cure

the defects by any means short of vacating the premises." Cemco Restaurants, Inc. v. Ten Park Ave. Tenants Corp., 135 A.D.2d 461, 463, 522 N.Y.S.2d 151 (1st Dep't 1987) (internal quotation marks and citation omitted).

Plaintiffs have met the first three elements of the Graubard test. First, there is no dispute that a commercial leasehold interest is at issue here. Second, the parties do not dispute that Manhattan received from NNA, the landlord on its sublease, a notice of breach and opportunity to cure on December 22, 2016. Third, Plaintiffs' period to cure extended until January 22, 2017, and Plaintiffs filed this timely motion on January 20, 2017; thus, Plaintiffs requested injunctive relief prior to the termination of the lease. (See Plaintiffs' Opening Br. at 11; see also Wagstaff Decl. ¶ 16, Ex. 5) Plaintiffs have not, however, demonstrated they are entitled to a Yellowstone injunction, in that they have failed to make the showing required by the fourth prong of the Graubard test. Plaintiffs have not demonstrated that "a basis exists for believing that [they have] the ability to cure by any means short of vacating the premises." See WPA/Partners LLC, 307 A.D.2d at 237. Plaintiffs' general representations, through Flom, that they will be able to cure the default through recovery on their claims in the instant action and/or alternative funding and recapitalization of Manhattan provide an insufficient basis for the requisite belief.

To begin with, the prospects of recovery from a litigation are impossible to successfully predict or identify, and Plaintiffs could not, at oral argument, even proffer a scenario in which recovery on the claims they have asserted would be sufficient to enable them to cure the cross-defaults and continue to operate in the Premises in accordance with the relevant agreements. Floor plan financing and cash flow for ongoing operations are necessary to cure the defaults under the related agreements and, in light of the lack of certainty as to the success and

time span of any litigation, the potential for recovery here does not provide a basis for belief that it will provide an adequate mechanism for cure of the current defaults.  Furthermore, Plaintiffs have failed to proffer specifics as to Flom's attempts to secure alternate sources of funding from certain financial institutions and his prospects of successfully doing so.  (See Hr'g Tr. at 10:16-23.)  The only evidence before the Court of Plaintiffs' ability to actually secure alternate sources of financing is Plaintiffs' representation in their Complaint that their affiliate BICOM has obtained alternative construction financing at the high interest rate of 20%.  (See Complaint ¶ 115.)  This limited, expensive financing does not supply a basis for belief that Plaintiffs will be able to secure viable sources of alternate funding to cure their very substantial financial defaults, which constitute defaults under the sublease of the Premises, by any means short of vacating the Premises.

Because Plaintiffs have failed to demonstrate they are prepared and maintain the ability to cure the default by any means short of vacating the premises, Plaintiffs' request for a Yellowstone injunction is denied.

TI Reimbursements

Plaintiffs request, "[a]part from Yellowstone relief," "additional and immediate relief" in the form of injunctive relief directing NNA to instruct Georgetown to reimburse BICOM for TI expenses incurred on behalf of Manhattan.  "A party seeking a preliminary injunction must either show that he is likely to succeed on the merits; that he is likely to suffer irreparable harm in the absence of preliminary relief; that the balance of equities tips in his favor; and that an injunction is in the public interest; or he may show irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make

them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."  ACLU v. Clapper, 785 F.3d 787, 825 (2d Cir. 2015) (internal citations and quotation marks omitted).  Plaintiffs, having failed to demonstrate that they are entitled to a Yellowstone injunction enabling them to remain in possession of the Premises to complete the construction, and having failed to demonstrate that the DPA does not require Georgetown to continue to pay Manhattan's TI reimbursements to NMAC in respect of outstanding construction loan obligations, has not met its burden of showing entitlement to injunctive relief requiring payment of the TI reimbursements to BICOM.  The request for injunctive relief is therefore denied.

CONCLUSION

For the reasons set forth above, Plaintiffs' Motion by Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction against NNA and NMAC is denied.

This Order resolves Docket Entry Nos. 35 and 43.


SO ORDERED.



Dated: New York, New York
       February 24, 2017


                                                    /s/ Laura Taylor Swain
                                                    LAURA TAYLOR SWAIN
                                                    United States District Judge